FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 19, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LINDSAY G.,[1]

                    Plaintiff,

          v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                    Defendant.

No.    2:23-cv-350-EFS

**ORDER PARTIALLY REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING TO DETERMINE THE PERIOD OF DISABILITY**

Plaintiff Lindsay G. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Plaintiff claims she is unable to work since June 17, 2017, due to bilateral carpal tunnel syndrome (CTS), neuropathy, rheumatoid arthritis, sleep apnea, depressive/bipolar disorder, anxiety disorder, personality disorder, and posttraumatic stress disorder (PTSD). As is explained below, the ALJ failed to differentiate between Plaintiff's hand symptoms before and after her bilateral CTS surgeries in March 2021. Based on this error,

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

the ALJ failed to adopt the medically supported occasional-manipulative limitation for, minimally, the period of May 2018 to April 2021. Therefore, this matter is remanded for the ALJ to determine the disability period.

## I.    Background

In September 2020, Plaintiff applied for benefits under Titles 2 and 16, claiming disability beginning January 1, 2017, with a date last insured of December 31, 2022.[2] After the agency denied benefits, ALJ Helen Valkavich held a telephonic hearing in May 2023, at which Plaintiff and a vocational expert testified.[3]

Plaintiff testified that she has a GED, she and her sons live with her parents, she owns a car, she drives nearly every day to substance abuse treatment classes, and she previously worked as a mental-health technician before getting assaulted on the job by a patient.[4] Following her work injury and a divorce, she struggled with substance use.[5] She testified that starting in about May 2018, her hands were swollen, she would drop items, her fingertips were numb, and she had difficulty tying her shoes, putting on makeup, holding her then-young son, typing

---

[2] AR 279–81.

[3] AR 40–88, 198–299.

[4] AR 50–54.

[5] AR 62.

on her phone, or writing.[6] She relayed that she had bilateral CTS surgery in March 2021, and for about a month after the surgeries she had to wear wrist/hand braces, which prevented her for doing much with her hands.[7] She testified that the surgeries did not relieve all of her hand symptoms but she can now usually pick things up and write for about an hour, although she does occasionally still drop items.[8] She stated that her current symptoms are due more to her tardive dyskinesia rather than CTS and that she has had difficulty seeing a rheumatologist or neurologist due to insurance issues.[9] She also stated that she can have difficulty sleeping soundly and walking without falling.[10]

The ALJ issued a decision denying benefits.[11] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and other evidence.[12] As to the medical opinions, the ALJ found:

---

[6] AR 65–67.

[7] AR 65–69.

[8] AR 68–69.

[9] AR 68–73.

[10] AR 72–73.

[11] AR 14–34. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[12] AR 27.

- the reviewing opinions of Vincent Gollogly, PhD, and Susan Daughterty, PhD, and the examining opinion of Ryan Marendiuk, NP, persuasive.

- the reviewing opinions of Howard Platter, MD, and Myron Watkins, MD, persuasive with the exception of their opined occasional-bilateral-handling-and-fingering limitation, which the ALJ found not persuasive.

- the examining opinion of Kayleen Islam-Zwart, PhD, was "broadly persuasive," except for her marked limitations.[13]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2022

- Step one: Plaintiff had not engaged in substantial gainful activity since June 17, 2017, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: bilateral CTS, rheumatoid arthritis, sleep apnea, obesity, depressive/bipolar disorder, anxiety disorder, personality disorder, PTSD, and polysubstance abuse.

---

[13] AR 25–26.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work as modified by:

  - Can lift and carry, as well as push and pull 20 pounds occasionally and 10 pounds frequently.
  - Sit 6 hours and can stand and/or walk 6 hours in an eight-hour workday.
  - Limited to frequent bilateral reaching, handling, and fingering.
  - Never climb ladders, ropes and scaffolds. Occasionally climb ramps and stairs, balance, kneel, crouch and crawl. Can frequently stoop.
  - Never work at unprotected heights, never work with exposed moving mechanical parts. Avoid concentrated exposure to vibration and extreme cold.
  - Can understand, follow, and carry out simple, as well as detailed but not complex, instructions. Can do routine and repetitive tasks.
  - Cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas but can meet general production demands.
  - Can interact with supervisors appropriately to receive instruction and redirection.
  - Can have interactions with co-workers that do not involve persuading, negotiating, or instructing.
  - Occasional interaction with the public that does not involve persuading, negotiating, or instructing.
  - Capable of work in a stable work environment where workplace and work process remain generally the same at least two-thirds of the time.

- Step four: Plaintiff could not perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as cleaner, sorter, and inspector.[14]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[15]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[16] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17]

---

[14] AR 19–29.

[15] AR 1–6.

[16] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[17] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not

### III.    Analysis

Plaintiff argues the ALJ failed to properly consider the longitudinal record when assessing the medical opinions, Plaintiff's symptom testimony, the listings, and the RFC. The Commissioner argues that the ALJ's factual findings, which deserve deference, are supported by substantial evidence. As is explained below, the ALJ's rejection of the medically opined bilateral occasional-manipulative limitation is not supported by substantial evidence for at least a three-year period.

### A.    Medical Opinions: Plaintiff establishes consequential error as to her manipulative abilities.

Plaintiff argues the ALJ committed several errors when evaluating the medical opinions, including improperly rejecting the medical opinions limiting Plaintiff to occasional handling and fingering, improperly rejecting the opinion of psychologist Dr. Isam-Zwart, and failing to incorporate Dr. Gollogly's and Dr. Daughterty's opinion that Plaintiff has occasional lapses in attention and concentration. The Court addresses each of these arguments.

####     1.    Standard

An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported

---

simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

by the record.[18] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[19] Supportability and consistency are the most important factors and must be explained by the ALJ:[20]

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[21]

### 2.    Manipulation Limitation

In July 2021, Dr. Platter reviewed the record and limited Plaintiff to light work with occasional bilateral handling and fingering due to bilateral CTS status

---

[18] 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

[19] 20 C.F.R. §§ 404.1520c(1)–(5), 416.920c(c)(1)–(5).

[20] *Id.* §§ 404.1520c, 416.920c(b)(2).

[21] *Id.* §§ 404.1520c, 416.920c(c)(1)–(2).

post-release.[22] In March 2022, Dr. Watkins reviewed the medical record and made the same finding.[23] These were the only two opinions regarding Plaintiff's exertional abilities.

As to Dr. Platter's and Dr. Watkin's opined occasional-manipulation limitation, the ALJ found:

> [T]he medical evidence and the claimant's testimony indicates that the carpal tunnel release surgeries have been effective and the claimant has only episodic instances of symptoms in her hands. Thus, the limitation to occasional bilateral handling and fingering is not consistent with the evidence and testimony. Instead, a more appropriate restriction is to frequent bilateral handling and fingering.[24]

Plaintiff argues that the record reflects the need for the more restrictive manipulative limitation, as was opined by Dr. Platter and Dr. Watkins. The Court agrees, at least in part.

The medical record and Plaintiff's testimony indicate that Plaintiff's more severe hand symptoms began about May 2018. The first treatment note of record is dated May 31, 2018, mentioning that Plaintiff reports numbness in her fingers and that her hand joints were stiff and occasionally painful and tender, especially in the morning, and that she was observed with hand joint swelling and mild

---

[22] AR 101–04, 125–28.

[23] AR 153–56, 181–84.

[24] AR 26.

tenderness.[25] Consistent with this treatment note, Plaintiff testified that her more severe hand symptoms began about May 2018.

The medical record thereafter contains several treatment notes for Plaintiff's hand pain, swelling, or numbness:

- December 2019: range-of-motion in hand normal but painful, and positive Tinel's sign and Phalen's maneuver, which was "highly suggestive of carpal tunnel syndrome." AR 571.

- April 2020: tenderness and edema present, significantly reduced grip strength reported. AR 922.

- October 2020: joint issues and difficulties crocheting reported; assessed that she may have a rheumatoid condition. AR 975.

- November 2020: reported arthralgias, joint swelling, and numbness in her bilateral hands (with sudden onset two weeks prior). AR 984.

- December 2020: nerve conduction study indicated severe axonal sensory peripheral neuropathy, abnormal electrodiagnostic study of the upper extremities, and evidence of moderately severe right and left median mononeuropathy at the wrists. AR 998.

- January 2021: moderate to severe CTS and neuropathy. AR 998.

- January 2021: "decreased to light touch in the median nerve distribution, decreased two point sensation across all fingers, unable to differentiate

---

[25] AR 435–38.

between 2 and 1 point" and "positive Tinel's over the carpal tunnel bilaterally, positive augmented Durkin's bilaterally." AR 1008.

In March 2021, Plaintiff underwent bilateral carpal tunnel release surgeries.[26] During her follow-up appointment on April 6, 2021, Plaintiff had the sutures removed, and it was noted that "she is doing well overall[;] she states the feeling in her fingertips has significantly improved since surgery. She still has occasional tingling but the numbness has almost resolved."[27] Later that month, Plaintiff sought treatment for several conditions, including continued neuropathic pain, which was considered to be possibly caused by a rheumatologic condition and/or gout. It was noted that her prior referrals to rheumatology had been denied due to her insurance; another referral was made; and her medication was adjusted.[28] Although subsequent treatment records refer to neuropathy, Plaintiff did not report persistent pain or numbness in her hands, nor was swelling or hand tenderness observed.

The lack of treatment or mention of hand pain, swelling, or tenderness indicates that Plaintiff's neuropathy following her CTS surgeries likely did not cause significant hand limitations. For instance, two treatment notes state, "[r]emote history of NCS demonstrating an idiopathic *lower* extremity peripheral

---

[26] AR 1171–77, 1292–97.

[27] AR 1045.

[28] AR 1036–41.

neuropathy," as opposed to peripheral neuropathy in her hands or wrists.[29]
Moreover, during her psychiatric consultative examination with NP Ryan
Marendiuk in June 2021, three months after her carpal tunnel surgeries, Plaintiff
shared that she cooked about two times a week, she did not have difficulties with
meal prep, and her then-current hobbies were playing the drums, crocheting, and
playing with her son.[30] Then during her psychological examination with Dr. Islam-
Zwart in January 2022, Plaintiff reported that she was "in pain every day," "her
bones feel like they are broken, and her joints are constantly inflamed and hurt,"
and "she cannot sit or stand for long periods of time or hold things. She notes that
her hands will just go out on her."[31] She also reported that "she is usually really
good with housekeeping" and that she does laundry, cooking, and grocery
shopping.[32]

     At the administrative hearing, Plaintiff testified that the CTS surgeries did
not relieve all of her hand symptoms, but it did help. She testified that she can pick
things up but she "still drop[s] things once in a while, but that's because of my
tardive dyskinesia."[33] She stated that about four-and-a-half weeks after her CTS

---

[29] AR 1247, 1259.

[30] AR 1128.

[31] AR 1224.

[32] AR 1225.

[33] AR 68.

1   surgeries she could take her hand braces off, and she is now able to write for

2   "maybe about an hour before my hands and stuff got tired."[34]

3       Based on this record, it is clear that Plaintiff's hand conditions were more

4   limiting prior to her CTS surgeries. The ALJ's rejection of Dr. Platter's and

5   Dr. Watkin's occasional-manipulation limitation focused solely on Plaintiff's

6   reduced hand symptoms *following* her CTS surgeries. By doing so, the ALJ's

7   rejection of this limitation is not supported by substantial evidence, particularly for

8   the period of May 2018 to April 2021. By focusing merely on the post-surgery

9   period, the ALJ consequently erred:[35] The vocational expert testified that fulltime

10  work was unavailable if Plaintiff was limited to light work with bilateral occasional

11  handling and fingering.[36]

12      Remand is required. On remand, the ALJ is to credit Dr. Platter's and

13  Dr. Wakins' opined occasional bilateral handling and fingering limitation for,

14  minimally, the period of May 2018 through April 2021. The ALJ is to assess when

15  after April 2021 Plaintiff's CTS and neuropathy/arthritis symptoms sufficiently

---

[34] AR 69.

[35] *See Smith v. Kijakazi*, 14 F.4th 1108, 1113–16 (9th Cir. 2021) ("The ALJ therefore erred by disregarding *all* of Smith's testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only clearly applicable to the late-period testimony.").

[36] AR 82.

abated to permit her to perform work with frequent handling and fingering. If necessary, the ALJ is to obtain subsequent medical records and obtain a physical consultative evaluation, as suggested by Dr. Islam-Zwart.[37]

### 3.    Mental-Health (Non-Exertional) Opinions

Plaintiff challenges the ALJ's 1) finding that Dr. Islam-Zwart's opined marked non-exertional limitations were unsupported and inconsistent with the evidence, and 2) failure to incorporate Dr. Gollogly's and Dr. Daughterty's opinion that Plaintiff would have occasional lapses in attention and concentration. Because this matter is remanded for consideration of Plaintiff's manipulation limitation, the ALJ is to also reconsider the mental-health medical opinions on remand. But to aid the ALJ's analysis on remand, the Court addresses some of the parties' arguments at this time.

####    a.    *Dr. Islam-Zwart*

On January 31, 2022, Dr. Islam-Zwart conducted a psychological evaluation, which included a clinic interview and mental-status examination, and completed a written report and the standard Psychological/Psychiatric Evaluation form.[38] Dr. Islam-Zwart opined several moderate limitations and two marked limitations

---

[37] AR 1226 (Plaintiff "reports her primary impediments to employment are her physical conditions and referral for a medical evaluation is necessary to further assess.").

[38] AR 1219–27.

as to: 1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and 2) complete a normal work day and work week without interruptions from psychologically based symptoms.[39]

As the Commissioner concedes, the ALJ mistakenly found that Dr. Islam-Zwart's opinion was issued "in the immediate aftermath of the claimant's heroin overdose." Instead, Dr. Islam-Zwart's evaluation of Plaintiff was one month *before* Plaintiff's overdose.[40] The Commissioner argues this error is harmless because the ALJ's evaluation of Dr. Islam-Zwart's opinion was not impacted by this error. The Court disagrees.

As to Dr. Islam-Zwart's opined limitations, the ALJ stated:

> While broadly persuasive, the undersigned notes that this opinion was averred in the immediate aftermath of the claimant's heroin overdose. The subsequent evidence shows that, with substance abuse treatment and approximately thrice-yearly psychotropic medication monitoring visits, the claimant has achieved good progress and stability in her mental health.[41]

The ALJ's evaluation of Dr. Islam-Zwart's January 2022 opinion focused on the (misunderstood) timing of the opinion as compared to Plaintiff's heroin overdose in February 2022 and the subsequent medical evidence. The ALJ's evaluation did not

---

[39] AR 1220.

[40] *See* AR 1219–27, 1271–80.

[41] AR 26.

consider the medical evidence prior to Dr. Islam-Zwart's examination, which

included Nurse Practitioner Marendiuk's evaluation in June 2021, when Plaintiff

appeared very tired and fell asleep twice briefly, her accidental medication

overdose in fall of 2019 due to being extremely tired, and her self-reports of not

sleeping well.[42] Moreover, the ALJ failed to appreciate that Dr. Islam-Zwart did

not solely base her marked limitations on Plaintiff's mental-health "instability" but

instead on how Plaintiff's physical conditions, combined with her mental-

impairments, impact her ability to sustain work activities.

On remand, the ALJ is to reevaluate Dr. Islam-Zwart's opinion, properly

considering that it was *before* Plaintiff's heroin overdose and against the

longitudinal medical record.

### 4. Dr. Gollogly and Dr. Daughterty

In June 2021, Dr. Gollogly reviewed the medical record, and Dr. Daughterty

reviewed the record in February 2022.[43] Although Dr. Islam-Zwart's January 2022

psychological evaluation preceded Dr. Daughterty's review, it does not appear that

Dr. Islam-Zwart's report was part of the record reviewed by Dr. Daughterty.[44] Both

Dr. Gollogly and Dr. Daughterty opined that Plaintiff was able to understand and

remember simple and routine tasks, her concentration would wax and wane, she

---

[42] AR 445–96, 1016, 1081, 1123–29, 1241, 1261.

[43] AR 98–108, 123–33, 150–63, 178–89.

[44] AR 139–45.

was "able to complete a usual work day and work week of simple and routine tasks [with] occasional lapses in attention and concentration," and she would do best with superficial and occasional interaction with the general public and a stable and routine work environment.[45]

Plaintiff argues that the ALJ failed to account for the opinion that Plaintiff would suffer occasional lapses in attention and concentration. Plaintiff highlights that "occasional" under the Social Security Act and regulations means up to one-third of the workday. The Commissioner did not respond to this argument.

POMS 25001.001(2) defines "occasional" to mean that the limitation exists up to 1/3 of the day, but this is in the context of exertional abilities not nonexertional abilities.[46] Here, there is no indication that these two psychologists, who were opining about Plaintiff's non-exertional abilities, intended "occasional lapses in attention and concentration" to mean that Plaintiff's attention and concentration would lapse up to 1/3 of the workday. Instead, a review of the entirety of these two opinions indicates that Dr. Gollogly and Dr. Daugherty used the term "occasionally" colloquially given that they opined that Plaintiff could sustain a usual workday and workweek notwithstanding occasional lapses in attention and concentration. The ALJ did not err in this regard when crafting the RFC.

---

[45] AR 98–108, 123–33, 150–63, 178–89.

[46] https://secure.ssa.gov/poms.nsf/lnx/0425001001 (last accessed Apr. 15, 2024).

**B.      Other Steps: The ALJ must reevaluate on remand.**

Because the ALJ's errors when weighing the medical evidence impacted her sequential analysis, the Court does not analyze Plaintiff's remaining challenges, including that the ALJ failed to consider whether Plaintiff meets or equals Listings 11.14B or 14.09 or whether the ALJ properly evaluated Plaintiff's symptom reports.

**C.      Remand: Further proceedings are needed to determine the disability period.**

Plaintiff seeks a remand for payment of benefits. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[47] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[48]

Although this record supports a disability award from about May 2018 to April 2021, remand is necessary to allow the ALJ to determine the specific dates that Plaintiff's hand symptoms, considering both her CTS and rheumatoid arthritis, required a restriction to occasional manipulation. If necessary, the ALJ is to develop the medical record and order a physical consultative examination.

---

[47] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

[48] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 19th day of April 2024.

_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 19